IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANNA MACHELLE GARCIA,<br><br>      **Plaintiff,**<br><br>vs.<br><br>NANCY A. BERRYHILL,[1]<br>**Acting Commissioner of the Social Security Administration,**<br><br>      **Defendant.** | Case No. 4:16-cv-00232-JED-GBC<br><br>**(MAGISTRATE JUDGE COHN)**<br><br>**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL** |

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL

### I.   Procedural Background

On February 18, 2011, Dianna Machelle Garcia ("Plaintiff") filed as a claimant for disability benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1382-1383 ("Act"), with a last insured date of December 31, 2014,[2] and claimed a disability onset date of April 16, 2010. (Administrative Transcript (hereinafter, "Tr."), 10). On July 11, 2012, the administrative law judge ("ALJ") found that Plaintiff was not disabled within the meaning of the Act. (Tr. 7-21). On September 17, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Based upon an unopposed motion from the Commissioner of the Social Security Administration ("Defendant"), the District Court remanded the case for reconsideration. (Tr. 458-59). On August 27, 2015, the ALJ again found that Plaintiff was not disabled within the meaning of the Act. (Tr. 371-395). Plaintiff sought review of the unfavorable decision, which the Appeals

---

[1] Effective January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration ("SSA") and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

[2] Disability insurance benefits ("DIB") are paid to an individual if that individual is disabled by last date that a claimant meets the requirements of being insured. See 42 U.S.C. § 423(a)(1)(A), (c)(1).

Council denied on March 14, 2016, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner of the Social Security Administration ("SSA"). (Tr. 360-66).

On April 27, 2016, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal a decision of Defendant denying social security benefits. (Doc. 1). On August 8, 2016, and August 25, 2016, Defendant filed an answer and an administrative transcript of proceedings. (Doc. 7, 8). On October 11, 2016, Plaintiff filed a brief in support of the appeal. (Doc. 9 ("Pl. Br.")). On December 7, 2016, Defendant filed a brief in response. (Doc. 11 ("Def. Br.")). On December 27, 2016, Plaintiff filed a reply brief. (Doc. 12 ("Reply")).

## II.     Relevant Facts in the Record

### A.     Background

Plaintiff was born in February 1973 and thus was classified by the regulations as a younger person through the date of the ALJ decision. (Tr. 28); 20 C.F.R. § 404.1563(c).

Plaintiff completed the twelfth grade and past relevant work as a cashier and production line worker. (Tr. 178, 425-26). Earnings reports demonstrate that Plaintiff: (1) did not meet the earning threshold for any quarters of coverage[3] from 1991 to 1999; (2) from 2000 to 2001 met the earning threshold for four quarters of coverage, with the highest annual income totaling $9,778.07 (3) met the earning threshold of one quarter of coverage in 2002; (4) did not meet the earning threshold for any quarters of coverage in 2003; and (5) met the earning threshold for three to four quarters of coverage from 2004 to 2010, with the highest income totaling $14,342.29. (Tr. 619).

---

[3] In a claimant's earnings record, a "c" indicates that a claimant has earned enough to qualify for a quarter of coverage and an "n" indicates that the threshold amount was not earned in a given quarter. See "Insured status," 1 Soc. Sec. Disab. Claims Prac. & Proc. § 4:2 (2nd ed.). For example, in 2000, "cccc" would indicate that a claimant has earned at least $780 each quarter of 2000 and "cccn" would indicate that a claimant earned at least $780 for the first three quarters of 2000. See "Quarter of Coverage," https://www.ssa.gov/OACT/COLA/QC.html (last accessed June 12, 2017) (listing required earning thresholds through 2017).

B.  **Relevant Treatment History and Medical Opinions**[4]

1. **Neurosurgery Specialists, Inc.: Daniel Boedeker, M.D.**

On July 26, 2010, Plaintiff reported experiencing pain in her lower back extending into her right leg for over a year. (Tr. 225). Plaintiff reported that the pain increases when she stands or sits and improves when she lies down. (Tr. 225). Past treatment included Neurontin and Motrin, which Plaintiff reported were minimally helpful. (Tr. 226). Her current listed medications included: (1) enalapril; (2) hydrochlorothiazide; (3) Motrin, and; (4) Synthroid. (Tr. 226). Dr. Boedeker reviewed a CT and noted "evidence of bilateral pars fractures at L3 with mild anterolisthesis of L3 on L4 and what appears to be a disk protrusion." (Tr. 225). Dr. Boedeker opined that the CT findings were "certainly consistent with her pain" and that she thought that there was "a good chance when she stands up that her subluxation worsens." (Tr. 225). It was noted that Plaintiff was morbidly obese with a BMI of 49, that she moved in and out of the chair easily, ambulated with a normal gait, presented with "excellent symmetrical strength in both lower extremities with normal sensation to pinprick and light touch," and presented with normal reflexes at the knees and the ankles. (Tr. 226-27). Dr. Boedeker noted that her examination was "unremarkable, and administered a steroid injection. (Tr. 225). Plaintiff was encouraged to lose weight to alleviate her symptoms and help her in surgery, should she undergo surgery. (Tr. 227).

2. **Diagnostic Records: Jonathan M. Gusdorff, D.O.; Amy S. Bokal, M.D.; Peter Duncanson, PA-C; Anil A. Kilpadikar, M.D.**

On April 13, 2010, Dr. Gusdorff reviewed a CT of Plaintiff's lumbar spine and opined that it demonstrated "[f]airly advanced degenerative disk disease at L3-L4 with a right neural foramina

---

[4] The undersigned will only summarize relevant medical records pertaining to physical impairments given that Plaintiff's brief does not assert disability based on psychological impairments.

herniation superimposed upon an annular disk bulge," and "[m]ild neural foraminal stenosis at LS-S1." (Tr. 254). On May 20, 2010, Dr. Bokal reviewed an MRI of Plaintiff's lumbar spine and opined that the L3-L4 level demonstrated:

> [m]oderate degenerative endplate edema. The disc mildly bulges or protrudes/herniates into the right neural foramen, produces moderate to severe right neural foraminal stenosis and contacts the exiting right L3 nerve root. Mild disc uncovering/bulging with small central disc extrusion/herniation. Mildly bulging parent disc mildly narrows the lateral recesses. Mild facet hypertrophy and left neural foraminal stenosis.

(Tr. 356).

In an x-ray report dated April 18, 2014, it was noted that while working under the supervision of Dr. Phillips, Mr. Duncanson, opined that the images demonstrated:

> some multilevel lumbar spondylosis and degenerative disk disease. It is most severe at the L3-4 level. She has very large osteophyte formation as well as early degenerative scoliosis at that level. She has disk space narrowing on the right side at that disk space. She also has a grade I L3-4 spondylolisthesis. No other significant abnormality, except for sate mild degenerative disk disease at L5-S1.

(Tr. 786). Mr. Duncanson concluded that the x-rays revealed multilevel lumbar spondylosis and degenerative disk disease, most severe at the L3-4 level. (Tr. 786). Dr. Kilpadikar interpreted an MRI taken April 28, 2014, and concluded that Plaintiff had degenerative disc disease most pronounced at the L3/L4 level. (Tr. 791).

### 3. Sapulpa PHS Indian Health Center

A record dated May 14, 2010, listed gabapentin for nerve pain and noted that Plaintiff had six refills remaining. (Tr. 259). Plaintiff's only pain medication prescribed was ibuprofen from December 22, 2010, to March 21, 2012. (Tr. 257, 259, 335-36, 358-59).

### 4. Consultative Examination Report: S. Krishnamurthi, M.D.

On June 10, 2011, Plaintiff underwent a consultative evaluation. (Tr. 302-09). Plaintiff reported that her predominant problems were back pain, high blood pressure, and hypothyroidism.

(Tr. 303). She has been told she has degenerative joint disease and reported that she has been experiencing constant pain for two years and periodic radiating pain to the right leg. (Tr. 303). Plaintiff reported that she could walk about half a mile, stand for ten minutes, sit for about fifteen minutes, and possibly lift ten pounds. (Tr. 303). Medications were listed as synthroid, ibuprofen, and vasotec. (Tr. 303). Upon examination, Dr. Krishnamurthi noted that Plaintiff was morbidly obese, did not use a walker or cane, walked normally, gait was normal and steady, speed was normal, stable, heel walking and toe walking appeared normal, and Plaintiff was able to sit on the examination table without any difficulty. (Tr. 304). Plaintiff demonstrated full motor strength in all the extremities. (Tr. 304). Plaintiff's range of motion was within normal limits for the cervical spine, dorsolumbar spine, hips, knees, ankles, shoulders, elbows, wrists, and fingers. (Tr. 304-08). Dr. Krishnamurthi said that Plaintiff had negative straight leg raise tests for both sitting and supine positions. (Tr. 309).

Dr. Krishnamurthi opined that notwithstanding Plaintiff's chronic back pain, degenerative joint disease of the lumbosacral spine, hypertension, obesity, and hypothyroidism, Plaintiff still has a normal gait, normal range of motion of the lumbosacral spine, normal range of motion of the cervical spine, normal range of motion of both upper extremities, and normal range of motion of both lower extremities, and no paraspinal tenderness or muscle spasm. (Tr. 305-09).

   5. **Physical RFC Assessments: Carmen Bird, M.D.; Karl K. Boatman, M.D.**

On July 20, 2011, Dr. Bird opined that Plaintiff was able to: (1) occasionally lift and/or carry twenty pounds; (2) frequently lift and/or carry ten pounds; (3) stand and/or walk for a total of about six hours in an eight-hour day; (4) sit for a total of about six hours in an eight-hour day, and; (5) push and/or pull without limitation. (Tr. 325). In support of her opinion, Dr. Bird cited x-rays and other medical records indicating Plaintiff's degenerative disc disease, stenosis,

depression, hypothyroidism, obesity, hypertension, grade 1 spondylolisthesis, radiculopathy, and Plaintiff's activities of daily living ("ADLs"). (Tr. 325-26). Dr. Bird added that Plaintiff did not use an ambulatory device, walked normally, had a normal gait, normal heel to toe walking, was able to sit on the examination table without any difficulty, maintained a 5/5 strength, demonstrated normal range of motions, and her sensory limited were within normal limits. (Tr. 326). Dr. Bird opined that Plaintiff could frequently: (1) climb stairs and ladders; (2) balance; (3) kneel; (4) crouch, and; (5) crawl. (Tr. 326). Dr. Bird opined that Plaintiff could occasionally stoop. (Tr. 326). Dr. Bird opined that Plaintiff did not have any manipulative, environmental, or communicative limitations. (Tr. 327-28).

On October 4, 2011, Dr. Boatman affirmed Dr. Bird's assessment. (Tr. 352).

6. **Warren Clinic: David Weigman, MD; Preston Phillips, M.D.**

On May 1, 2013, Plaintiff sought treatment for chronic conditions which included back pain. (Tr. 745). Plaintiff stated that back surgery was recommended but did not want to until the back pain worsened. (Tr. 745). On June 19, 2013, Plaintiff sought treatment for her chronic conditions, rash, and allergies, however, back pain was not listed. (Tr. 737). On December 19, 2013, Plaintiff sought treatment for her chronic conditions and abdominal discomfort, however, back pain was not listed. (Tr. 734).

Current medications listed from June 19, 2013, September 19, 2013, December 19, 2013, April 3, 2014 did not include any for pain relief. (Tr. 732, 735, 738-39, 741). On April 3, 2014, Plaintiff reported an exacerbation of back pain over the past few weeks, right hip pain, and numbness in lower leg. (Tr. 731). Plaintiff was referred to an orthopedic consultation. (Tr. 732).

During an orthopedic consultation dated April 18, 2014, Plaintiff reported a history of lower back pain and right leg pain starting about five to six years ago. (Tr. 787). Plaintiff reported

that sitting, lying down, standing, walking, and lifting exacerbates her leg and back pain. (Tr. 787). Plaintiff reported that she needs to sit and rest, her right lower extremity was weak, and her pain is at its worst, she rated it as a "nine" on a ten point scale. (Tr. 787). Plaintiff reported that bending forward did not cause any pain and she had quit working as a cashier due to back and leg pain. (Tr. 787). Upon examination, Mr. Duncanson observed that Plaintiff presented with a full range of motion bilaterally in shoulders, elbows, and wrists. (Tr. 788). Plaintiff's motor strength was 5/5 in upper and lower extremities, her deep tendon reflexes were 2+/4 bilaterally in the upper extremities, knees, and ankles. (Tr. 788). Mr. Duncanson noted that Plaintiff's sensation was intact to touch, and had a good range of motion bilaterally in the hips, knees, and ankles. Plaintiff had no clonus, negative Babinski, and negative bilateral straight leg raise. (Tr. 788). Mr. Duncanson also observed that Plaintiff ambulated with a normal gait and could walk heel to toe. (Tr. 788). Mr. Duncanson summarized the x-ray findings concluding that Plaintiff had multilevel lumbar spondylosis and degenerative disc disease which was most severe at the L3-4. (Tr. 788). Mr. Duncanson concluded that Plaintiff had neurogenic claudication, recommended an MRI to evaluate her increased right leg pain, and prescribed Relafen instead of ibuprofen. (Tr. 788).

On June 24, 2014, Plaintiff returned for additional orthopedic consultation for back pain, right hip and leg pain, neurogenic claudication, degenerative spondylolisthesis, and degenerative disc disease. (Tr. 778). It was noted that on April 28, 2014, Plaintiff underwent a MRI scan of her lumbar spine, and that she was previously prescribed Relafen which she found useful. (Tr. 778, 81). Upon review of the MRI, Dr. Phillips concluded that there:

> Is advanced L3 4 degenerative disc disease, with an associated disc herniation, endplate sclerosis and facet joint degenerative changes and associated spondylolisthesis. This results in central canal lateral recess and neuroforaminal stenosis greater on the right than on the left. The lateral recess and foraminal stenosis on the right is indeed severe.

Page **7** of **20**

(Tr. 781). Plaintiff reported "some interval improvement in her symptoms with use of the oral nonsteroidal anti-inflammatory agents." (Tr. 782). Dr. Phillips noted that the concern was that Plaintiff would eventually require surgical intervention and he stated that Plaintiff would continue with conservative treatment until her symptoms demand surgical intervention. (Tr. 782). Dr. Phillips counseled Plaintiff with regard to pursuing a low impact exercise program to include water aerobics, swimming, and utilization of a stationary bike and/or elliptical walker. (Tr. 782). Dr. Phillips provided Plaintiff with "additional literature regarding the nature of spinal surgical intervention and the anticipated postoperative course." (Tr. 782). Dr. Phillips recommended a follow-up visit in six weeks. (Tr. 782). Her listed medications do not include one for pain relief. (Tr. 779)

On July 3, 2014, Plaintiff was prescribed one daily 15 mg tablet of Meloxicam for pain. (Tr. 747). Dr. Phillips noted that Plaintiff had low back pain radiating into the right leg, spondylolisthesis of the lumbar region, spinal stenosis of the lumbar region, lumbar disc herniation, degenerative disc disease, and morbid obesity since June 24, 2014. (Tr. 748-49). It was noted that Plaintiff experienced nausea and vomiting with Meloxicam. (Tr. 749). Dr. Weigman noted that Plaintiff recently got an orthopedic consultation and was told that she had spurs and a pinched nerve. (Tr. 752). Plaintiff reported that she planned to lose weight to alleviate her low back pain symptoms and did not want surgery. (Tr. 753).

On October 9, 2014, Plaintiff reported concern regarding her psychiatric symptoms. (Tr. 759). On January 5, 2015, Plaintiff sought treatment for psychiatric symptoms. (Tr. 761).

### 7. Muscogee Nation Behavioral Health

A record dated February 6, 2015, listed medications included 800 mg of ibuprofen three times a day, if needed, from November 30, 2011, to February 6, 2015. (Tr. 768).

### 8. Precision Pain: Daniel Morris, D.O.

On February 11, 2015, Plaintiff reported a history of periodic low back pain and right leg pain which began in 2009. (Tr. 964). Plaintiff reported that activity exacerbated her symptoms while laying down and heating pad alleviated the pain. (Tr. 964). Dr. Morris noted that Plaintiff had not lost control of bowels or bladder and reported shooting pain down the right leg but without any weakness in the right leg. (Tr. 964). Upon examination, Dr. Morris noted that the lumbosacral spine revealed marked elevated lordosis with some flattening of the thoracic curve, tenderness over the L4-5 and L5-S1 areas bilaterally, a "grossly positive" straight leg raise on the right, and that facet loading maneuvers tended to reproduce pain. (Tr. 965). Dr. Morris noted that imaging revealed "anterolisthesis of L3 on L4 as well as spurring and probable anterior end plate injury at some point in time." (Tr. 965). Dr. Morris opined that Plaintiff had "marked degeneration of the disc as well." (Tr. 965). Dr. Morris observed that Plaintiff's neurologic examination was normal and gait was normal. (Tr. 965). Dr. Morris concluded that Plaintiff had lumbar spondylosis with radiculopathy to the right leg and prescribed hydrocodone (Norco) twice a day as needed for pain, baclofen 10 mg three times daily for muscle spasm and its NMDA activity, and recommended water aerobics and to pursue a weight loss program. (Tr. 966).

On April 7, 2015, Plaintiff reported that she had problems with baclofen that she only takes at night, and she took Norco when necessary. (Tr. 967). Plaintiff did not report experiencing any common side effects and found the medications beneficial. (Tr. 967). Upon examination, Dr. Morris noted that Plaintiff demonstrated "limitations in lumbar flexion-extension lateral side bending," that her bilateral lower extremities were equal and strong, that she was able to transition from sitting to standing, and that her gait was nonantalgic. (Tr. 968). Dr. Morris reviewed MRI images and discussed the option of a right L4 nerve root block. (Tr. 968).

On June 4, 2015, Plaintiff reported using Norco twice daily and baclofen three times a day, which Plaintiff reported were effective in controlling her pain and improving her quality of life. (Tr. 969). Dr. Morris repeated the notes made in the previous appointment that Plaintiff demonstrated "limitations in lumbar flexion-extension lateral side bending," that her bilateral lower extremities were equal and strong, and that her gait was nonantalgic. (Tr. 970).

### III.     Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits under the Act, a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844

F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A.  **ALJ's Assessment of Relevant Evidence**

Plaintiff argues that the ALJ erred by "failing to discuss uncontroverted and/or significantly probative evidence that conflicted with his findings." (Pl. Br. at 5-10). Plaintiff lists instances in the record where there have been diagnoses and Plaintiff's subjective complaints of pain as

probative evidence that the ALJ should have explicitly addressed. (Pl. Br. at 5-10). The undersigned finds that the ALJ did not need to explicitly address this evidence as the evidence is not significantly probative and the evidence does not lend support to the possibility of an ALJ reaching a different conclusion.

"Ultimately, the outcome of the case depends on the demonstration of the functional limitations of the disease or impairment. . . ." Mills v. Colvin, No. 14-CV-03481-CBS, 2016 WL 759159, at *5 (D. Colo. Feb. 26, 2016) (quoting McKean v. Colvin, No. 1:13-CV-2585, 2015 WL 1201388, at * 7 (M.D. Pa. Mar. 16, 2015)). Generally, diagnoses by themselves are not significantly probative evidence such that an ALJ has to explicitly discuss and reject every mention of a diagnosis in the record in order to find an individual not disabled. See Fulton v. Colvin, 631 F. App'x 498, 501 (10th Cir. 2015); Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (explaining that although "an ALJ is not required to discuss every piece of evidence," he must discuss "the evidence supporting his decision, ... uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"); Kruse v. Astrue, 436 F. App'x 879, 885 (10th Cir. 2011).[5] The focus on a claimant's function stems from the fact that the same diagnosis can manifest into varying degrees of limitations. See 20 C.F.R. §§ 404.1529(c), 416.929(c)

---

[5] Accord Revisions To Rules Regarding The Evaluation Of Medical Evidence, 81 FR 62560 (S.S.A.), 2016 WL 4764999 (September 2016) ("Diagnoses and prognoses do not describe how an individual functions"); Revised Medical Criteria For Evaluating Mental Disorders, 81 FR 66138 (S.S.A.), 2016 WL 5507752 (September 2016) (explaining in the commentary that "mental disorders listings are function-driven, not diagnosis-driven" and ". . . when we determine whether a person's mental disorder is disabling under the law, it does not matter whether the person has a diagnosis or a combination of diagnoses. The controlling issue is whether the medically determinable mental impairment(s) result(s) in limitations in functioning that prevent the person from working"). The undersigned finds the SSA's discussion on this matter pertinent. See North Haven Board of Education v. Bell, 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) ("Although postenactment developments cannot be accorded 'the weight of contemporary legislative history, we would be remiss if we ignored these authoritative expressions'") (quoting Cannon v. Univ. of Chi., 441 U.S. 677, 686 n. 7 (1979)).

(describing how the severity of symptoms is evaluated); Cf. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198-99, 122 S. Ct. 681, 691-92, 151 L. Ed. 2d 615 (2002), overturned due to legislative action on other grounds (2009) (using carpel tunnel syndrome as an example of the variance of symptoms among individuals with the same diagnosis); Americans With Disabilities Act (ADA): Guidance, 2015 WL 6037995, at *182 ("Individuals with the same diagnosis or disability can have very different functional abilities").

In determining whether an individual is disabled under the Act, probative evidence is that which demonstrates "the most [a person] can still do despite [his or her] limitations." See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (describing criteria for formulating RFC); Kruse v. Astrue, 436 F. App'x 879, 885 (10th Cir. 2011). Objective medical evidence such as reduced joint motion, muscle spasm, sensory deficit or motor disruption "is a useful indicator to assist [an adjudicator] in making reasonable conclusions about the intensity and persistence of [an individual's] symptoms and the effect those symptoms, such as pain, may have on [an individual's] ability to work." 20 C.F.R. § 416.929; see also SSR 96-7P (July 2, 1996) (valid through March 15, 2016 and superseded by SSR 16-3p).

The listed omissions presented in Plaintiff's brief fail to demonstrate Plaintiff's job-related limitations. (Pl. Br. at 6-10). With regard to Plaintiff's argument about omissions that hint at the possibility of surgery, Plaintiff fails to direct the Court to where in the record surgery was recommended with certainty. (Pl. Br. at 8-9). A "concern is that the patient will eventually require surgical intervention" is too tenuous to be probative and based upon the totality of the evidence, the ALJ's choice to omit this does not amount to reversible error.

The ALJ extensively reviewed and accurately summarized the totality of the relevant evidence from July 2008 through the date of the decision. (Tr. 383-87). The ALJ noted: (1) the

April 2010 CT scan which "showed fairly advanced degenerative disc disease at L3-4 with a right neural foraminal herniation superimposed upon an annular disc bulge; and mild neural foraminal stenosis at LS-S1"; (2) records demonstrating that Neurontin also helped with her low back; (3) the May 2010 MRI confirming the previous CT scan findings; (4) Dr. Boedeker July 2010 evaluation and found "a pars defect at L3-4 with a resultant grade 1 spondylolisthesis narrowing of the foramen," noted that her physical examination was unremarkable with a normal gait, excellent strength in the lower extremities, and normal sensation and reflexes, and recommended conservative treatment; (5) that Sapulpa Health Center records reflected routine treatment not focusing on the Plaintiff's back problems, and; (6) Dr. Krishnamurthi's June 2011 physical consultative examination and noted that while Plaintiff alleged experiencing constant pain, she also stated that she was able to walk about half a mile, stand for ten minutes, sit for about fifteen minutes, and lift maybe ten pounds and Krishnamurthi observed that Plaintiff had a normal gait, walked unassisted, walked heel and toe normally, was able to sit on the examination table without any difficulty, had normal range of motion in all planes tested, and Dr. Krishnamurthi assessed Plaintiff with chronic back pain, degenerative joint disease of the lumbosacral spine, hypertension, obesity, and hypothyroidism. (Tr. 384-85).

With regards to Plaintiff's more recent treatment, the ALJ observed: (1) treatment from Dr. Weigman beginning in May 2013 which consisted of bloodwork, physical examination, and medications; (2) in April 2014, plaintiff reported worsening of low back pain with radiation down the right leg and the ALJ noted that "[h]owever, on April 18, 2014, a physical examination performed during orthopedic treatment was normal in all respects, except for the claimant's weight (303 pounds) and elevated blood pressure (136/83)"; (3) an April 2014 MRI of the lumbar spine which showed advanced L3-4 degenerative disc disease, with an associated disc herniation,

endplate sclerosis and facet joint degenerative changes and associated spondylolisthesis; (4) records from Dr. Phillips who noted in June 2014 that Plaintiff experienced some interval improvement in symptoms with use of non-steroidal anti-inflammatory agents and recommended conservative treatment until Plaintiff's symptoms dictate surgical intervention; (5) treatment records with Dr. Morris starting in February 2015 wherein it was noted that Dr. Morris prescribed pain medications (Norco and Baclofen), scheduled lumbar epidural steroid injections, and recommended water aerobics and weight loss; (6) that in April 2015 Plaintiff denied any side effects from her medications (Norco and Baclofen), and reported that her medications were beneficial especially when she has long, full active days with her family; (7) Dr. Morris' April 2015 physical examination which showed limitation in lumbar range of motion, but normal lower extremity strength, ability to transition from sitting to standing and non-antalgic gait, and; (8) in June 2015, Plaintiff reported improvement with symptoms since starting water aerobics and pain medications. (Tr. 385-86).

Substantial evidence supports the ALJ's conclusion that there was an "inconsistency with the examination findings and the allegations of pain and functional limitation, with conservative treatment recommended," and that the "history of treatment [was] not fully consistent with [Plaintiff's] allegations concerning the intensity, persistence, and limiting effects of her impairments." (Tr. 385-86). Based on the totality of the evidence, substantial evidence supports the ALJ finding that the effectiveness of conservative treatment, the absence of side effects and benefit of medications was not fully consistent with the disabling limitations alleged by Plaintiff. (Tr. 386). The ALJ accurately observed that "[n]o treating physician has expressed an opinion regarding [Plaintiff's] ability to perform work related functions," which as explained above, evidence to perform work related functions is significantly probative evidence.

Moreover, the ALJ reasonably relied on the July 2011 non-examining opinion from Dr. Bird and the October 2011 confirmation opinion from Dr. Boatman. (Tr. 386). Drs. Bird and Boatman reviewed the evidence up to July 2011 and October 2011, respectively, and opined the severity of Plaintiff's limitations were still compatible with the ability to work. (Tr. 325-28, 352). Plaintiff does not direct the Court to evidence demonstrating significant deterioration of symptoms lasting twelve months or more following the opinions of Drs. Bird and Boatman, as such a showing would lend support to the possibility of an ALJ reaching a different conclusion. See, e.g., 42 U.S.C. § 423(d)(1)(A) (twelve month durational requirement); 20 C.F.R. § 404.1509 (twelve month durational requirement); Decker v. Chater, 86 F.3d 953, 954-55 (10th Cir. 1996) (discussing the relevance of significant deterioration following evidence demonstrating Plaintiff's ability to work); Boswell v. Astrue, 450 F. App'x 776, 778 (10th Cir. 2011) (affirming decision where ALJ correctly observed that there was no objective evidence that Plaintiff's condition "significantly worsened"). As the ALJ thoroughly reviewed the record and properly characterized Plaintiff's symptoms and functional limitations, substantial evidence supports the ALJ's conclusions.

**B.     Credibility**

Plaintiff asserts that the ALJ erred in his assessment of Plaintiff's credibility with regard to Plaintiff's physical limitations. (Pl. Br. at 11-13). Where a medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a credibility finding on the claimant's subjective statements. SSR 96-7p. The credibility finding must be based on a consideration of the entire case record, considering several factors in totality. SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929. The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their

effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

There is a distinction between what an adjudicator must "consider" and what the adjudicator must explain in the disability determination. See SSR 06-03p (explaining that to "consider" means to provide explanation sufficient for a "subsequent reviewer to follow the adjudicator's reasoning"). This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)).

Plaintiff does not address the totality of the evidence, for example: (1) records indicating that Plaintiff's current medications often did not include any pain medication, records indicating that Plaintiff treated her pain with ibuprofen; (2) repeated examinations wherein physicians observed that Plaintiff had a normal gait, nearly full range of motion, able to move off of the examination table without difficulty, and walked without the need for ambulatory devices, and; (3) expert medical opinions which support the ALJ's conclusion.

With regards to pain medication: (1) a record dated May 14, 2010, listed gabapentin for nerve pain and noted that Plaintiff had six refills remaining (Tr. 259); (2) Plaintiff's only pain medication prescribed was ibuprofen from December 22, 2010, to March 21, 2012 (Tr. 257, 303, 335-36, 358-59); (3) current medications listed from June 19, 2013, September 19, 2013, December 19, 2013, April 3, 2014, did not include any for pain relief (Tr. 732, 735, 738-39, 41); (4) on April 18, 2014, Plaintiff was prescribed Relafen instead of ibuprofen (Tr. 788); (5) on July

3, 2014, Plaintiff was prescribed one daily 15 mg tablet of Meloxicam for pain, but later noted it caused vomiting (Tr. 747, 49); (6) on February 6, 2015, listed medications included 800 mg of ibuprofen three times a day, if needed, from November 30, 2011, to February 6, 2015 (Tr. 768); (7) on February 11, 2015, Plaintiff was prescribe hydrocodone (Norco) twice a day as needed for pain, baclofen 10 mg three times daily for muscle spasm (Tr. 966), and; (8) on June 4, 2015, Plaintiff reported using Norco twice daily and baclofen three times a day, which Plaintiff reported were effective in controlling her pain and improving her quality of life (Tr. 969).

      With regard to examinations and medical opinions: (1) on June 10, 2011, Dr. Krishnamurthi noted that Plaintiff walked normally, gait was normal and steady, speed was normal, stable, heel walking and toe walking appeared normal, and Plaintiff was able to sit on the examination table without any difficulty and Plaintiff's range of motion was within normal limits for the cervical spine, dorsolumbar spine, hips, knees, and ankles, Plaintiff had negative straight leg raise tests for both sitting and supine positions (Tr. 304- 309); (2) on July 26, 2010, Dr. Boedeker observed that Plaintiff moved in and out of the chair easily, ambulated with a normal gait, presented with "excellent symmetrical strength in both lower extremities with normal sensation to pinprick and light touch," and presented with normal reflexes at the knees and the ankles (Tr. 226-27); (3) on July 20, 2011, Dr. Bird opined that Plaintiff was able to stand and/or walk for a total of about six hours in an eight-hour day and sit for a total of about six hours in an eight-hour day (Tr. 325); (4) on October 4, 2011, Dr. Boatman, M.D. affirmed Dr. Bird's assessment (Tr. 352); (5) on April 18, 2014, Mr. Duncanson also observed that Plaintiff ambulated with a normal gait and could walk heel to toe (Tr. 788); (6) on February 11, 2015, Dr. Morris noted, a "grossly positive" straight leg raise on the right (Tr. 965), and; (7) on April 7, 2015, and June 4, 2015, Dr. Morris noted that Plaintiff demonstrated "limitations in lumbar flexion-extension

lateral side bending," she was able to transition from sitting to standing, and that her gait was nonantalgic (Tr. 968, 970).

The ALJ extensively discussed the material evidence throughout the decision. (Tr. 377-386). The undersigned finds unpersuasive Plaintiff's argument that the ALJ erred by considering physicians' characterization of Plaintiff's treatment as "conservative" by arguing that the sporadic recommendation and administration of steroid injections and the mention of the possibility of surgery should outweigh physicians' observations and expert opinions regarding Plaintiff's job-related abilities.

Plaintiff fails to meet her burden in demonstrating how the omission would change the outcome of the case. See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Based on the foregoing, substantial evidence supports the ALJ's credibility determination. See SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929.

## V.     Recommendation

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## VI.     Notice Regarding Objection

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than July 5, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b) (3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b) (1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 Ph.D. 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

SUBMITTED on June 21, 2017.

                                        **Gerald B. Cohn**
                                        **United States Magistrate Judge**